WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| MEHRDAD ARDALAN,<br><br>               Plaintiff,<br><br>  vs.<br><br>NAJMEDDIN NAJM SADRI and NOOSHIN MEHRAN,<br><br>               Defendants. | No. 2:15-cv-0591-HRH |

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's complaint, or in the alternative to transfer this action to California.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Mehrdad Ardalan. Defendants are Najmeddin Najm Sadri and Nooshin Mehran, who are husband and wife.

---

[1]Docket No. 12.

[2]Docket No. 13.

-1-

Plaintiff alleges that on April 2, 2009, defendant Mehran, who is plaintiff's niece, "executed and delivered a certain promissory note in the amount of $105,000.00 under which Mehran promised to pay [plaintiff] on demand the sum of $105,000.00 plus interest at the rate of 30%...."[3] The promissory note was executed in California.[4] Plaintiff also alleges that on October 3, 2009, Mehran "executed and delivered a second promissory note in the amount of ... $30,000.00 under which Mehran promised to pay [plaintiff] on demand the sum of $30,000.00 plus interest at the rate of 30%...."[5] The second promissory note was also executed in California.[6]

Plaintiff alleges that Mehran has breached both notes by failing to pay him back.[7] Plaintiff alleges that he "holds and owns both of the notes in Arizona where he now resides."[8] Plaintiff also alleges that he has opened a bank account in Arizona in order to receive payment on the notes.[9]

In connection with both promissory notes, plaintiff alleges that Mehran gave him

---

[3]First Amended Complaint at 4-5, ¶ 11, Docket No. 7.

[4]Exhibit A, First Amended Complaint, Docket No. 7.

[5]First Amended Complaint at 6, ¶ 15, Docket No. 7.

[6]Exhibit C, First Amended Complaint, Docket No. 7.

[7]First Amended Complaint at 6-7, ¶¶ 14 & 17, Docket No. 7.

[8]Id. at 8, ¶ 19.

[9]Id. at 2, ¶ 1.

undated checks in the amount of the loans and that the purpose of the undated checks was "to guarantee payment of that amount at any time in the future, in case she might default."[10] Plaintiff alleges that "Mehran refuses to fund the checking account with funds sufficient for the check[s] to be honored...."[11] Plaintiff alleges that he "owns and holds the checks at his home in Maricopa County, Arizona."[12]

Plaintiff next alleges that in October 2009, "Sardi gave [plaintiff] an undated check ... in the amount of $4,880.32 to guarantee a cash loan made by [plaintiff] to Sardi in that amount."[13] Plaintiff further alleges that in November 2009, "Sardi gave [plaintiff] an undated check ... in the amount of $500.00 to guarantee the payment of a second cash loan."[14] Plaintiff alleges that "Sardi refuses to fund the checking account with funds sufficient for the checks to be honored and has in effect refused to repay the loans."[15] Plaintiff alleges that he "holds and owns the checks" in Arizona.[16]

Plaintiff alleges that on April 2, 2009, "Mehran wired $90,000.00 of the $105,000.00 to

---

[10] Id. at 10, ¶ 28.

[11] Id. at ¶ 29.

[12] Id. at 11, ¶ 32.

[13] Id. at 13, ¶ 36.

[14] Id. at ¶ 37.

[15] Id. at ¶ 40.

[16] Id. at 14, ¶ 42.

her sister in Turkey."[17]  By doing so, plaintiff alleges that Mehran "removed most of the money given her under the promissory notes beyond the reach of [plaintiff] and the United States State and Federal Courts."[18]  Plaintiff alleges that if he had known that "Mehran would immediately wire $90,000.00 out of the United States to her sister in Turkey he would never have accepted the promissory notes and checks."[19]

At some point in time, both plaintiff and Mehran were in Iran and plaintiff sued Mehran on the promissory notes in Iran.[20]  Plaintiff received a judgment against Mehran in Iran.[21]

On April 1, 2015, plaintiff commenced this action. In his amended complaint, he asserts five counts.  In Count I, he asserts a claim for breach of each of the promissory notes.  In Count II, he asserts a claim based on the undated checks Mehran gave him to guarantee payment of the promissory notes.  In Count III, he asserts a claim based on the undated checks Sardi gave him to guarantee payment of the cash loans.  In Count IV, he asserts a fraud claim.  And, in Count V, he asserts a claim for recognition and enforcement of the Iranian judgment.

Defendants, proceeding pro se, now move to dismiss plaintiff's first amended

---

[17]Id. at 15, ¶ 44.

[18]Id. at ¶ 45.

[19]Id. at 16, ¶ 52.

[20]Id. at 19, ¶ 73.

[21]Exhibit H, First Amended Complaint, Docket No. 7.

complaint on the grounds that the court lacks personal jurisdiction over them. If the court finds that it has personal jurisdiction, then defendants move, pursuant to 28 U.S.C. § 1406(a), to either dismiss this case or transfer it to California on the grounds that venue in Arizona is not proper.

Discussion

"Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense by motion." CYBERsitter, LLC v. People's Republic of China, 805 F. Supp. 2d 958, 966 (C.D. Cal. 2011). "'Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists.'" Id. (quoting Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002)). If the "district court act[s] on the defendant's motion to dismiss without first holding an evidentiary hearing, ... the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003). The plaintiff "'need only demonstrate facts that if true would support jurisdiction over the defendant.'" Id. (quoting Doe, I v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" Id. (quoting Doe, I, 248 F.3d at 922).

"When no federal statute specifically defines the extent of personal jurisdiction, [the court] look[s] to the law of the state where the district court sits—in this case, Arizona." CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1110 (9th Cir. 2004). "'Arizona's long-arm rule permits the exercise of personal jurisdiction to the extent allowed by the due process clause of the United States Constitution.'" Id. (quoting Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1188 (9th Cir. 2002)).

Although personal jurisdiction may be general or specific, this case only involves specific jurisdiction. The court applies the following three-part test to determine whether the exercise of specific jurisdiction over defendants would comport with due process:

> "(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum ... (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must ... be reasonable."

Id. (quoting Harris Rutsky, 328 F.3d at 1129).

> The exact form of [the court's] jurisdictional inquiry depends on the nature of the claim at issue. For claims sounding in contract, [the court] generally appl[ies] a "purposeful availment" analysis and ask[s] whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." For claims sounding in tort, [the court instead appl[ies] a "purposeful direction" test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. Because [plaintiff] asserts both a contract and a

tort claim, both tests are at issue here.

Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015).

Defendants argue that they have not purposefully availed themselves of the privilege of conducting activities within Arizona nor have they directed any actions at Arizona because the promissory notes were executed in California at a time when all of the parties were residents of California.[22] The undated checks are drawn on California banks and there is no allegations that these checks were mailed to plaintiff in Arizona. In short, defendants argue that the transactions at issue here have nothing to do with Arizona, other than plaintiff happened to move to Arizona at some later point in time.

Plaintiff does not contend that the court has in personam jurisdiction over defendants. Rather, plaintiff argues that the court has quasi in rem jurisdiction.[23] There are two types of quasi in rem jurisdiction. In type one, "the court undertakes to determine the claims of specifically identified persons to the thing in question."[24] "Type two quasi in rem jurisdiction is used to establish the ownership of property in a dispute unrelated to the property." Office

---

[22]Declaration of Nooshin Mehran at ¶¶ 3 & 5, appended to Motion to Dismiss [etc.], Docket No. 12.

[23]Although plaintiff also makes reference to in rem jurisdiction in his opposition, this case cannot involve in rem jurisdiction. In a true in rem proceeding, "the court undertakes to determine all claims that anyone has to the thing in question." Restatement (Second) of Judgments, cmt. a, § 6 (1982). Such a proceeding is "one 'against all the world.'" Id. This proceeding involves only plaintiff's claims against defendants.

[24]Id.

Depot Inc. v. Zuccarini, 596 F.3d 696, 699 (9th Cir. 2010). The property at issue here, according to plaintiff, is the promissory notes. Thus, this case could only involve type one quasi in rem jurisdiction. However, there are no claims to the promissory notes for the court to determine. It is undisputed that plaintiff owns the promissory notes. The issue here is that defendants have allegedly breached the promissory notes and that defendants made fraudulent statements to plaintiff in connection with the loans. In order for the court to have jurisdiction over such a case, it must have personal jurisdiction over the defendants, which here it does not because defendants have had no contact with Arizona. Defendants have done nothing to purposefully avail themselves of the privilege of conducting activities within Arizona nor have they directed any actions toward Arizona.

Plaintiff then appears to attempt to plead around the personal jurisdiction requirement by asserting a claim for recognition and enforcement of the Iranian judgment. "There is currently no federal statute governing recognition of foreign judgments in the federal courts." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1212 (9th Cir. 2006). "In a typical enforcement case, the party in whose favor the foreign judgment was granted comes to an American court affirmatively seeking enforcement. The standard rule in such a case is that the federal court sitting in diversity applies the law of the state in which it sits." Id. at 1213.

Although plaintiff cites to Arizona's Uniform Enforcement of Foreign Judgments, Act,

that Act has no application here because it does not apply to " judgments from foreign countries." Multibanco Comermex, S. A. v. Gonzalez H., 630 P.2d 1053, 1053 (Ariz. Ct. App. 1981). Rather,

> Arizona courts have relied on two different Restatements that address the enforcement of international judgments. See Alberta Sec. Comm'n v. Ryckman, 30 P.2d 121 (Ariz. Ct. App. 2001) (relying on the Restatement (Third) of the Foreign Relations Law of the United States (1987)); Rotary Club of Tucson v. Chaprales Ramos de Pena, 773 P.2d 467 (Ariz. Ct. App. 1989) (relying on the Restatement (Second) of Conflict of Laws (1971)). The two are similar in principle; however, the Foreign Relations Restatement presents a more complete and useful framework for analyzing foreign-country judgments.

Global Royalties, Ltd. v. Xcentric Ventures, LLC, Case No. 07–956–PHX–FJM, 2007 WL 2949002, at *2 (D. Ariz. Oct. 10, 2007).

> Section 481 of the Foreign Relations Restatement provides a general rule for recognition, a prerequisite to enforcement:
>
> > Except as provided in § 482, a final judgment of a court of a foreign state granting or denying recovery of a sum of money, establishing or confirming the status of a person, or determining interests in property is conclusive between the parties, and is entitled to recognition in courts in the United States.

Id. (quoting Restatement (Third) of the Foreign Relations Laws of the United States § 481(1) (1987)).

Plaintiff has cited to no authority that suggests that he, as a judgment creditor, would be permitted to obtain recognition and enforcement of the Iranian judgment without any

showing that defendants are subject to personal jurisdiction in Arizona. The court's independent research has revealed scant authority on this issue. However, what little authority there is suggests that in order for plaintiff to obtain recognition and enforcement of the Iranian money judgment without any showing that defendants are subject to personal jurisdiction in Arizona, defendants would have to have some assets in Arizona. In <u>Shaffer v. Heitner</u>, 433 U.S. 186, 210, n.36 (1977), the Court noted that

> [o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter.

In <u>Lenchyshyn v Pelko Electric, Inc.</u>, 281 A.D.2d 42, 43 (N.Y.A.D. 2001), the plaintiffs had obtained a money judgment against the defendants in Canada. The plaintiffs sought to have that judgment recognized and enforced in New York and alleged that the defendants had assets in New York. The court held that under those circumstances, "[c]onsiderations of logic, fairness, and practicality dictate that a judgment creditor be permitted to obtain recognition and enforcement of a foreign country money judgment without any showing that the judgment debtor is subject to personal jurisdiction in New York." <u>Id.</u> at 49.

But here, plaintiff has not alleged that defendants have any assets in Arizona and

defendants aver that they have no assets in Arizona.[25]  All plaintiff has alleged is that the promissory notes and undated checks, which are evidence of the debt defendants allegedly owe to plaintiff, are in Arizona.  But these are plaintiff's assets, not defendants.  In order to be permitted to obtain recognition and enforcement of the Iranian judgment, plaintiff would have to make some showing that defendants are subject to personal jurisdiction in Arizona, a showing that plaintiff has not made.

## Conclusion

Based on the foregoing, defendants' motion to dismiss[26] plaintiff's first amended complaint for lack of personal jurisdiction is granted.[27]  No leave to amend is granted because plaintiff has already had one opportunity to cure the jurisdictional defects of his complaint. The clerk of court shall dismiss plaintiff's first amended complaint without prejudice.

DATED at Anchorage, Alaska, this 2nd day of November, 2015.

/s/ H. Russel Holland
United States District Judge

---

[25]Declaration of Najmeddin Najm Sardi at ¶ 6; Mehran Declaration at ¶ 6, both appended to Motion to Dismiss [etc.], Docket No. 12.

[26]Docket No. 12.

[27]Because the court is dismissing on personal jurisdiction grounds, it need not consider defendants' alternative argument that this case should be dismissed or transferred because venue is not proper in Arizona.